```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
    _____

    WILLIAM J. ROSE,
                                         1:17-cv-04603-NLH
                      Plaintiff,
                                              OPINION
    v.

    COMMISSIONER OF SOCIAL
    SECURITY,
                      Defendant.
    _____
```

**APPEARANCES:**

RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002
    On behalf of Plaintiff

EVELYN ROSE MARIE PROTANO
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] under Title II of the Social Security

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423

Act. 42 U.S.C. § 423, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, May 17, 2013. For the reasons stated below, this Court will reverse that decision and remand the matter for further proceedings.

I. BACKGROUND AND PROCEDURAL HISTORY

On July 30, 2013, Plaintiff, William J. Rose, protectively filed an application for DIB,[2] alleging that he became disabled on May 17, 2013. Plaintiff claims that he can no longer work at his previous job as a truck driver because of his monocular vision due to diabetic retinopathy, diabetes mellitus type 2, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, and spondylosis (degeneration of the spine).

Plaintiff's initial claim was denied on October 22, 2013,

---

et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

and upon reconsideration on February 20, 2014.  Plaintiff requested a hearing before an ALJ, which was held on August 15, 2016.  On September 16, 2016, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on April 19, 2017, making the ALJ's September 16, 2016 decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

**II. DISCUSSION**

    **A.    Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d

700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

5

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[3] for

---

[3] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  Because the ALJ issued his decision prior to that effective date, the Court must employ the

6

determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d

---

standards in effect at the time of his decision.

1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of monocular vision due to diabetic retinopathy and diabetes mellitus type 2 were severe. At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") precluded him from performing his past work as a truck driver, but his RFC rendered him capable of performing work at

all exertional and skill levels,[4] with the only limitation of avoidance of concentrated exposures to hazards, such as moving machinery and unprotected heights (steps four and five).

Plaintiff argues that the ALJ erred in his decision because he did not properly consider his "severe" impairments in combination with his other "not severe" exertional and non-exertional impairments when making the RFC determination. Plaintiff also argues that the ALJ failed to properly assess Plaintiff's limitations due to his increasing and irreversible vision loss as a stand-alone basis for disability, or in combination with his other impairments in the RFC analysis.

A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).[5] In making a RFC determination, an ALJ is required to do the following:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective

---

[4] See 20 C.F.R. § 404.1568 ("[O]ccupations are classified as unskilled, semi-skilled, and skilled."); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

[5] The RFC finding is a determination expressly reserved to the Commissioner. 20 C.F.R. §§ 416.927(d)(2), 416.946(c).

> medical evidence, we mean medical signs and laboratory
> findings . . . . By other evidence, we mean . . .
> statements or reports from you, your treating or nontreating
> source, and others about your medical history, diagnosis,
> prescribed treatment, daily activities, efforts to work, and
> any other evidence showing how your impairment(s) and any
> related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529. The ALJ is also required to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p. "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." Id.

The ALJ's finding of RFC must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of

subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705) (further explaining that that this "is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence"). The Court finds that the ALJ failed to meet these standards in this case.

The following is indisputable from the record evidence, and referenced by the ALJ in his decision: (1) Plaintiff suffers from diabetes mellitus with monocular vision (loss of vision in one eye) as a result of diabetic retinopathy (a disorder of the retina caused by diabetes); (2) By April 2016, the corrected visual activity in Plaintiff's "good" right eye was 20/200, and the corrected visual activity in his "bad" left eye was "finger counting at two feet"; (3) Plaintiff has degenerative disc disease of his lumbar spine; (4) Plaintiff has degenerative joint disease of his knees; (5) Plaintiff has neuropathy (permanent nerve damage); (6) Plaintiff uses a medically prescribed cane; (7) Plaintiff wears a medically prescribed back brace; (8) Plaintiff relates difficulties with his memory caused by fluctuating blood sugar; (9) Plaintiff reports significant

pain; and (10) Plaintiff was 55 years old at the time of his alleged onset date, and he was 58 years old at the time the ALJ issued his decision.

Despite noting all of these impairments and limitations, including Plaintiff's advanced age,[6] the ALJ determined that Plaintiff retained the RFC to perform work at all exertional and skill levels.  That finding therefore meant that the ALJ believed Plaintiff was capable of performing "very heavy work," which "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more."[7]  20 C.F.R. § 404.1567.  It also meant that Plaintiff could perform "skilled work," which requires a person to use judgment, laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, making necessary computations or mechanical adjustments to control or regulate the work, or deal with

---

[6] See 20 C.F.R. § 404.1563(e) ("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work.  We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).").

[7] If someone can do very heavy work, that means that he or she can also do heavy, medium, light and sedentary work. 20 C.F.R. § 404.1567.

people, facts, or figures or abstract ideas at a high level of complexity. 20 C.F.R. § 404.1568. The only limitation placed on Plaintiff's RFC was that Plaintiff needed to avoid concentrated exposures to hazards, such as moving machinery and unprotected heights.

The ALJ's RFC determination would not be disturbed if substantial evidence supported that finding, but the Court is unconvinced the evidence cited by the ALJ in his decision supports the conclusion that Plaintiff is capable of frequently lifting 100 pounds and making precise measurements or reading blueprints, among other higher level physical, mental, and visual activities. Even accepting that Plaintiff's only "severe" ailments are his diabetes and monocular vision, the ALJ appears to have glossed over the effects of Plaintiff's non-severe impairments in combination with his vision loss. The ALJ relates that certain medications and physical therapy treatments have helped with Plaintiff's back and knee pain, but the record evidence does not support that those conditions are wholly without any exertional limitations. This is especially true when those impairments are considered in combination with his low blood sugar-induced memory loss, neuropathy, and advanced age, all of which the ALJ is required to consider in combination

13

with Plaintiff's vision impairment when assessing Plaintiff's RFC.

Considering Plaintiff's significant vision loss by itself also calls into doubt the ALJ's RFC determination. The record contains numerous notes from treating medical providers and non-treating consultant medical sources stating that Plaintiff is incapable of driving a motor vehicle. The ALJ's RFC assessment, however, fails to acknowledge this obvious limitation in Plaintiff's functional capacity. Moreover, the jobs suggested by the Vocational Expert based on the ALJ's RFC determination do not appear to account for Plaintiff's vision impairments. The VE suggested that the RFC ascribed to Plaintiff by the ALJ rendered him capable of being a motor vehicle parts assembler,[8]

---

[8] CODE: 806.684-010 : ASSEMBLER, MOTOR VEHICLE (auto. mfg.) alternate titles: quality worker; team member

Assembles motor vehicles, such as automobiles, trucks, buses, or limousines, at assigned work stations on moving assembly line, performing any combination of following repetitive tasks according to specifications and using handtools, power tools, welding equipment, and production fixtures: Loads stamped metal body components into automated welding equipment that welds together components to form body subassemblies. Positions and fastens together body subassemblies, such as side frames, underbodies, doors, hoods, and trunk lids, to assemble vehicle bodies and truck cabs preparatory to body welding process. Bolts, screws, clips, or otherwise fastens together parts to form subassemblies, such as doors, seats, instrument control panels, steering columns, and axle units. Installs mechanical and electrical components and systems, such as engine,

kitchen helper,[9] and cleaner/housekeeping[10]. It is evident from

---

transmission, and axle units; pumps; wire harnesses; instrument control panels; and exhaust, brake, and air-conditioning systems. Fits and adjusts doors, hoods, and trunk lids. Seals joints and seams, using caulking gun. Fastens seats, door paneling, headliners, carpeting, molding, and other trim into position. Fills vehicle systems with brake and transmission fluids, engine coolant, and oil. May apply precut and adhesive coated vinyl tops and pads to vehicle roofs. May verify quality of own work and write description of defects observed on documents attached to vehicle bodies. May enter and retrieve production data, using computer terminals. . . . .

[9] CODE: 318.687-010: KITCHEN HELPER (hotel & rest.) alternate titles: cookee; cook helper; kitchen hand; kitchen porter; kitchen runner

Performs any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of handtruck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food.

[10] CODE: 323.687-014: CLEANER, HOUSEKEEPING (any industry) alternate titles: maid

Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes

even the most cursory review of the job descriptions that
Plaintiff would be incapable of preforming the required tasks of
these jobs due to his vision impairments.  In sum, on this
record, the ALJ's Step 4 RFC determination of ability at all
exertional levels is not supported by substantial evidence and
led directly to the Step 5 error of relying on jobs Plaintiff is
clearly incapable of performing.  See Kangas, 823 F.2d at 777
(at Step 5 burden shifts to the Commissioner to prove there is
some other kind of substantial gainful employment claimant is
able to perform).

  Additionally, under Social Security Administration
Regulations, a claimant may qualify for disability benefits for
blindness if his vision cannot be corrected to better than
20/200 in the better eye, or if his visual field is 20 degrees
or less in the better eye, for a period that lasted or is
expected to last at least 12 months.  Even if a claimant's
vision does not meet the SSA's definition of blindness, a

---

supplies, such as drinking glasses and writing supplies. Checks
wraps and renders personal assistance to patrons. Moves
furniture, hangs drapes, and rolls carpets. Performs other
duties as described under CLEANER (any industry) I Master Title.
May be designated according to type of establishment cleaned as
Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel &
rest.); or according to area cleaned as Sleeping Room Cleaner
(hotel & rest.).

claimant may still qualify for disability benefits if his vision problems alone, or combined with other health problems, prevent him from working.  Additionally, the SSA Regulations are more generous for claimants aged 55 or older who have vision impairments.  See Social Security Administration Publication No. 05-10052, "If You're Blind Or Have Low Vision — How We Can Help" (January 2018); see also SSR 18-02p (citing 42 U.S.C. § 1381a ("every aged, blind, or disabled individual who is determined . . . to be eligible on the basis of his income and resources shall, in accordance with and subject to the provisions of this title, be paid benefits by the Commissioner of Social Security"); 42 U.S.C. § 1382(a) (defining an eligible individual); 20 C.F.R. § 416.912 (providing that, in general, a claimant must prove to us that he or she is blind), § 416.981 (defining blindness), § 416.982 (explaining when we will consider an individual to be blind based on a State plan)). These considerations all seem to apply to this claimant.

It appears to the Court that underlying the ALJ's ultimate conclusion that Plaintiff is not disabled is how Plaintiff's diet contributed to the exacerbation of his diabetes.  The ALJ repeatedly references medical records that advise Plaintiff to improve his diet to better regulate his blood sugar levels.

17

Putting aside the evidence which shows that Plaintiff's limited finances affected his ability to eat the best foods for his condition, as well as his efforts to comply with the physicians' advice to eat healthier foods,[11] Plaintiff's difficulty in following a treatment plan is not a basis for the denial of benefits, particularly when perfect compliance with his doctor's orders would not restore Plaintiff's vision or nerve damage. While diet and type 2 diabetes are clearly related, an element of causation is missing here.  See SSR 82-59 (explaining that a claimant's failure to follow a treatment plan prescribed by a treating source may be the basis for a denial of benefits only if, *inter alia*, the treatment "is clearly expected to restore capacity to engage in any SGA," or the "record discloses that there has been refusal to follow prescribed treatment").

Moreover, contrary to the ALJ's perception of Plaintiff's

---

[11] The Social Security Regulations instruct that "the if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.  We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. . . . When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following: . . . An individual may not be able to afford treatment and may not have access to free or low-cost medical services."  SSR 16-3p.

non-compliance with his physicians' orders, the record shows that Plaintiff regularly visited medical professionals to treat and manage his diabetes and diabetes-related impairments, as well as his pain and limitations due to back and knee problems. Plaintiff attended physical therapy as directed and continued exercises at home. He also endeavored to eat healthier, despite his difficulties in affording the best food options. Nevertheless, Plaintiff's vision further deteriorated, and the effects of Plaintiff's degenerative disc and joint diseases, as well as the other impairments related to his diabetes, continued to decline.

Overall, it is clear that substantial evidence does not support the ALJ's determination that Plaintiff has the RFC to perform work at all exertional and skill levels. When an ALJ has failed to apply the correct legal standards and his conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 99 (1991) (providing that under Sentence Four of 42 U.S.C. § 405(g), a court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing").

The ALJ's current RFC determination is not supported by the record evidence, but the SSA is in a better position than this Court to determine Plaintiff's proper RFC and thereafter undertake a renewed Step 5 analysis.  The Court will therefore reverse the ALJ's decision and remand the matter so that the SSA may properly consider Plaintiff's vision impairments, singularly and in combination with his other impairments, in determining Plaintiff's disability claim.

**III. CONCLUSION**

For the reasons expressed above, the ALJ's determination that Plaintiff is not totally disabled as of May 17, 2013 will be reversed and remanded for further consideration consistent with this Opinion.  An accompanying Order will be issued.


Date: November 26, 2018              s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.